```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
Sonny Southerland, Sr., et al.

                    Plaintiffs,        CV-99-3329 (CPS)

        - against -                    MEMORANDUM OPINION
                                       AND ORDER
City of New York, et al.

                    Defendants.
----------------------------------------X
```

SIFTON, Senior Judge.

Plaintiff Sonny Southerland, Sr. commenced this action, on his own behalf and on behalf of his then minor children, Venus, Sonny Jr., and their still minor siblings, Nathaniel, Emmanuel, Kiam, and Elizabeth, against defendants the City of New York ("City"), Timothy Woo, and J. Does 1-9, for compensatory and punitive damages stemming from a decision of the New York State Family Court, Kings County, to remove Southerland's children from his custody without a court order. The children were allegedly held without court order for a period of three days, after which defendants obtained a court order confirming the removal.

After the parties reported to the Court that a settlement had been reached with respect to the claims of the minors, I issued an order to show cause why an infant compromise order approving settlement of the claims pursuant to Local Rule 83.2 should not be granted. The parties having responded, for the reasons that follow, the infant compromise order is denied.

## BACKGROUND

The following facts are drawn from the amended complaint and the parties' submissions in response to the order to show cause. They are, for the purposes of this issue, undisputed.

In June, 1997, after Sonny Southerland's daughter, Ciara, drank non-toxic paint at school, defendant Timothy Woo ("Woo"), a caseworker for defendant ACS, visited plaintiffs' home in Brooklyn to inquire about Ciara's well-being.

On June 6, 1997, defendant Woo obtained a search warrant to search Southerland's house from defendant Daniel Turbow, a New York State family court judge. Plaintiffs allege that defendant Woo's affidavit in support of his application for the search warrant was false and misleading.

On June 9, 1997, defendant Woo arrived at Southerland's home with police officers to execute the search warrant. At approximately 11:00 p.m. that night, Woo removed Southerland's children from his custody without a court order. The children remained in custody without a court order until the morning of June 12, 1997, at which time Woo obtained a court order confirming the removal. After this time, Venus, Sonny Jr., Nathaniel, and Emmanuel were in foster care for approximately eight years. Kiam and Elizabeth remain in foster care.

On June 9, 1999, plaintiff Sonny Southerland, proceeding *pro se*, filed the original complaint on behalf of himself and his minor children, alleging violations by over forty named defendants of 42 U.S.C. §§ 1983, 1985, 1986, and 1988, 18 U.S.C. §§ 241 and 242, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 42 U.S.C. §§ 1962 and 1964, and various other provisions of state law. The complaint alleged, among other things, that Woo wrongfully seized Southerland's children and removed them from his home and custody without proper investigation of allegations of abuse and neglect. The complaint also alleged that the children were beaten in the foster care of defendant Joyce Baldwin. Various defendants filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). In a Memorandum and Order dated February 1, 2000, I granted the motions on various grounds, including failure to state a claim, lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, Eleventh Amendment immunity, judicial immunity, and failure to plead certain matters with sufficient particularity. In addition, I denied a request for a preliminary injunction and dismissed the complaint in Southerland's companion case, CV-99-6159, arising out of the same situation as that which gave rise to the first filed case.

Southerland appealed to the Second Circuit Court of Appeals, and the decision was affirmed in part, reversed in part

and remanded. The Court of Appeals held, *inter alia*, that Southerland's Section 1983 claims against ACS and the individual employees of ACS should not have been dismissed for failure to state a claim, on the ground that the complaint stated a valid claim for a violation of the Fourteenth Amendment Due Process Clause. *Southerland v. Guiliani*, No. 00-7410, 2001 WL 127293 (2d Cir. Feb. 14, 2001).

Upon remand, Michael G. O'Neill ("O'Neill") was appointed counsel for plaintiffs.[1] Plaintiffs filed an amended complaint on November 22, 2002, consistent with the Court of Appeals' opinion, and proceeded with discovery. The amended complaint alleges violations of the Fourth and Fourteenth Amendments and municipal liability with respect to the time the children were held without court order. Following document production but prior to the taking of depositions, a disagreement arose between Southerland and O'Neill. According to O'Neill's declaration, the disagreement resulted in a impasse of such nature that it became impossible for him to continue representing Southerland. Southerland requested that O'Neill cease representing him, but continue to represent his children.[2] Southerland elected to proceed *pro se*. O'Neill asked the Court to

---

[1] O'Neill is a member of the Court's pro bono panel.

[2] According to O'Neill's declaration, Southerland recognized that he could not represent the children.

appoint a guardian ad litem for the children because Southerland was too emotionally involved, and in O'Neill's view, was unable or unwilling to grasp the fact that this litigation will not result in the return of his children to his custody. O'Neill also stated that Southerland did not understand the scope and extent of the constitutional issues involved and may not be able to adequately evaluate settlement opportunities. O'Neill proposed that the Court appoint Rose M. Weber ("Weber"), as guardian ad litem for the children.

On April 20, 2004, I granted the motion to relieve O'Neill as counsel for Southerland. O'Neill remained counsel for the children. In addition, Rose Weber was appointed guardian *ad litem* for the children.

On April 19, 2006, counsel for the children and the defendants reported to the Court that they had entered into a stipulation of settlement of the children's claims. On April 24, 2006, I issued an order to show cause why an infant compromise order approving the settlement should not be granted. Thereafter, on May 13, 2006, two of the children, Sonny Jr. and Venus, reached 18 years of age.

## DISCUSSION

Local Rule 83.2 states that an action on behalf of an infant may not be settled without leave of the court. Such proceedings are to follow "as nearly as may be" to New York state

statutes and rules. In determining whether the settlement should be approved, the Court's role is to "'exercise the most jealous care that no injustice be done' to the infant." *Anderson v. Sam Airlines*, 94 Civ. 1935, 1997 WL 1179955 (E.D.N.Y. Apr. 25, 1997) (quoting *Dupont v. Southern Nat'l Bank of Houston*, 771 F.2d 874, 882 (5th Cir. 1985)).

New York law provides detailed procedures to be followed before an infant's claim can be settled. Absent compliance with these procedures, a settlement may be unenforceable. N.Y. C.P.L.R. § 1208 (commentary by Vincent C. Alexander). New York Civil Procedure Law Rule 1208(a) provides that prior to the issuance of an infant compromise order, the parties must submit an affidavit of the infant's representative stating: 1) her name, residence, and relationship to the infant; 2) the name, age, and residence of the infant; 3) the circumstances giving rise to the claim; 4) the nature and extent of the damages sustained, the name of each treating physician, the medical expenses incurred, the period of disability, the amount of lost wages, and the present physical condition of the infant; 5) the terms of the proposed distribution of the settlement; 6) the facts surrounding any other motion or petition for settlement of the same claim; 7) whether reimbursement for medical or other expenses has been received from any other source; 8) whether any representative of the infant or member of

the infant's family has made a claim for damages suffered as a result of the same occurrence, and if so any amount paid to settle such claim.

New York Civil Procedure Law Rule 1208(b) requires the infant's attorney to submit an affidavit stating: 1) his reasons for recommending settlement; 2) that he has not become concerned in the settlement at the instance of a person opposing or with interests adverse to the infant, and whether he has represented a person asserting a claim arising from the same occurrence; and 3) the services rendered by him.

In addition, the moving party, the infants, and the infants' attorney are required to appear before the Court, unless their absence is excused for good cause. N.Y. C.P.L.R. § 1208(d); *Linda J. v. Wharton*, 594 N.Y.S.2d 971, 972 (N.Y. City Civ. Ct. 1992) (describing the appearance requirement as "strictly enforced").³ The appearance of the infant serves at least two purposes. First, an appearance may permit the Court to determine the extent of any injuries suffered. *See id.* Second, appearance by the infants permits the Court to determine their position with respect to the settlement, which is a relevant consideration even

---

³ "In determining whether good cause has been shown, the court will consider whether the infant's appearance is necessary for a proper determination of settlement, and whether it would constitute a particular or unnecessary hardship if attendance is required." *Linda J.*, 594 N.Y.S.2d at 972.

given their minority. *See Caglioti v. Medi-Cab, Inc. of N.Y.*, 52 A.D.2d 544 (N.Y. App. Div. 1976).

The parties have stipulated that the children's claims be settled in the sum of $269,000. $35,800 will be paid to each of the plaintiff children, for a total of $214,800. Defendants also agree to pay $51,200 in attorneys' fees and expenses and $3,000 in law guardian's fees.[4]

The affidavit of Rose Weber, guardian ad litem for the children, states 1) her name, residence, and relationship to the infant; 2) the name, age, and residences of the infants; 3)that the claim arose because the children were held by the City of New York without their father's consent and without a court order for a period of 56 hours; 4) that the damages suffered by the children include "the fear, uncertainty, alarm, and related emotional trauma caused by being removed from their home by strangers in the middle of the night and the ensuing separation from their father, and...the violation of their civil rights," and that "[n]one of the children has been treated by any physician or medical provider for these damages, which did not manifest themselves physically. There were no medical expenses,

---

[4] The parties state that Sonny Southerland, Sr. had originally agreed to settle the case in full, including his own claims. However, Southerland subsequently stated that he objected to the settlement. Accordingly, the defendants and counsel for the children are seeking to settle only the children's claims. This court may approve the children's settlement, even over the objections of the children's parent. *See, e.g., Park v. City of New York*, 2003 WL 133232, *6 (S.D.N.Y.2003).

no period of disability and no wages lost. There are no known problems with the present physical condition of any of the children;" 5) the terms of the proposed distribution of the settlement; 6) that "[t]here are no other actions to recover on the claims asserted and settlement herein, and there are no other motions or petitions pending for settlement of these claims;" 7) that "[t]here were no medical or other expenses incurred as a result of the claims, therefore there has been no reimbursement of the same;" and 8) that "[t]he father of the children, Sonny B. Southerland, is also a plaintiff in this lawsuit and his claims were settled on the same terms and conditions as the claims of the children, i.e., under his settlement, he is to receive $38,500."[5]

The affidavit from the children's attorney summarizes the events giving rise to the present action and states that he believes the settlement to be in the best interests of the children for the following reasons:

> liability is clear, but damages are problematic. There were no physical injuries, none of the children received any medical or psychological treatment relating to the 56 hours of unlawful detention by the City. The removal took place in 1999, which means that the children ranged in age from to five to eleven. Of major concern is the fact that the removal was approved by the Family Court and the children all remained in foster care for years. This fact

---

[5] Plaintiff Southerland states that he never entered into such an agreement; however, counsel for the children and the defendants believe that Southerland did, in fact, agree to the settlement, and that the settlement is enforceable. The settlement of plaintiff Southerland's claims is not presently before the Court.

> impacted the issue of damages in two respects: first, it would be difficult for the children to differentiate their feelings from the 56 hours of illegal removal to the years of subsequent lawful removal. Second, a jury may be negatively influenced by the fact that the Family Court approved the removal. While I would argue that this fact is irrelevant, especially on the issue of liability, I am not confident that I would be able to exclude it on the issue of damages, and it may render a jury ill disposed to award substantial damages for the 56 hours of removal in view of the subsequent years of foster care.

Counsel further states,

> If the case did not settle, we faced a motion for summary judgment, trial, post trial motions, and possibly an appeal. On the other hand, the amount of the settlement we were able to negotiate from the City represented a very reasonable level of compensation, indeed generous in some respects. It would be impossible for me to guarantee a better result if we took the case to trial. Under these circumstances, it is a very favorable settlement for the children and should be approved.

Finally, the affidavit states that the children's counsel has not

> become concerned in the settlement at the instance of a party or person opposing, or with interests adverse to, the infant or incompetent nor received nor will receive any compensation from such party, and I have not and do not now represent any other person asserting a claim arising from the same occurrence, except that I represented the plaintiff Sonny Southerland, the father of the children, until about April 20, 2004, when I was relieved as his attorney.

The affidavit also describes the services provided by counsel.

The reasons given for settling this case for the amount specified appear at first glance to be justified. The children would, under the settlement agreement, receive a substantial sum of money in compensation for a relatively small period of unlawful removal. If the settlement were not approved, the City

might, and has indicated it would, move for summary judgment and dismissal of the claims. Even if the complaint survived summary judgment, the case would proceed to trial, and it is possible that after trial, which could be expensive and protracted, the jury would award no damages or damages substantially lower than those provided for in the settlement agreement. The affidavits submitted by the children's counsel and the guardian ad litem fulfill the procedural requirements of N.Y.C.P.L.R. 1208.

However, two important and related issues require disapproval of the settlement. First, since the stipulation was entered into, two of Southerland's children, Sonny Jr. and Venus, have reached 18 years of age. Second, both Sonny Jr. and Venus made clear to this Court in the hearings conducted on the order to show cause that they object to the settlement.

Counsel for the children states, without citation to authority, "[i]t is the position of the minor children that the settlement reached between the parties is a binding, enforceable agreement, notwithstanding any objections raised by Mr. Southerland or his now adult son." However, this Court is not aware of any authority which stands for the proposition that once a stipulation of settlement is executed on behalf of minor children, but before it is approved by the Court, the stipulation is enforceable. To the contrary, the case law clearly holds that until the Court approves the settlement of infants' claims, the

settlement is tentative. *See Rivers v. Genesis Holding LLC*, 11 Misc.3d 647, 649, 812 N.Y.S.2d 301 (N.Y. Sup. Ct. 2006) (stating, "[a] purported settlement of the claim(s) of an infant can be set aside, and the action restored to a court's active calendar because the settlement is tentative until approved by a court, pursuant to CPLR 1207, upon compliance with CPLR 1208"). Here, because the settlement was not approved before Sonny Jr. and Venus reached the age of 18, and because Sonny Jr. and Venus, now adults, object to the settlement, I decline to approve the settlement.

Because the settlement agreement concerns the claims of ALL infant plaintiffs, including then-infants Sonny Jr. and Venus, I am unable to approve the settlement agreement, even as to the remaining children.[6]

**CONCLUSION**

For the foregoing reasons, the infant compromise order must be denied.

The Clerk is directed to furnish a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.

Dated : Brooklyn, New York
August 2, 2006

---

[6] The City has made clear that it would be unwilling to go forward with a settlement with respect to some, but not all, of the children because it would still be forced to litigate the case as to the remaining children.

By: <u>/s/ Charles P. Sifton (electronically signed)</u>
    United States District Judge