UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
SONNY B. SOUTHERLAND, SR., *et al.*,                        :   **MEMORANDUM**
                                                            :   **DECISION AND ORDER**
                              Plaintiffs,                   :
                                                            :   99 Civ. 3329 (BMC)(LB)
          -against-                                         :
                                                            :
TIMOTHY WOO,                                                :
                                                            :
                              Defendant.                    :
                                                            :
----------------------------------------------------------- :X

**COGAN**, District Judge.

      This is an action under 42 U.S.C. § 1983 brought by a father and his now-grown children for damages against Timothy Woo, a former caseworker for the New York City Administration for Children's Services ("ACS"). The current complaint charges that in 1997, Mr. Woo made false statements in order to obtain entry into the family home and then improperly removed the children without a court order, resulting in them being placed into the foster care system. As the case number indicates, the case has a lengthy history that has included appeals and remands from the Second Circuit. See Southerland v. City of New York, 680 F.3d 127 (2d Cir.), rehearing en banc den., 681 F.3d 122 (2d Cir. 2012). The matter is currently before the Court on the motion of Brian S. King for leave to appear pro hac vice made on the morning of jury selection. The Court denied the motion on the record and hereby sets forth the basis for its ruling.

## BACKGROUND

      Plaintiff Southerland has proceeded *pro se* for most of the long history of this case. However, as the matter approached trial in 2013, the Court received an application to appear pro

hac vice from Brian S. King. Mr. King is admitted in New York State but not in this Court. The application was granted in the ordinary course, and the case proceeded to trial with Mr. King as counsel.

As shown below, at that trial, Mr. King demonstrated not only a lack of familiarity with federal practice and procedure, but he repeatedly displayed contempt for the Court, and went so far as to make repeated misstatements or misrepresentations to the Court and the jury about the evidence in the case. The trial ended in a hung jury and the Court declared a mistrial, although I am not specifically attributing that to Mr. King's misconduct.

At a conference that occurred after the mistrial, Mr. King appeared for Mr. Southerland. Immediately following the conference, the Court's Deputy Clerk received a voicemail message from Mr. Southerland which stated that during the preceding week, Mr. Southerland had terminated Mr. King and that Mr. King therefore had attended the conference without authority. See Southerland v. Woo, No. 99 Civ. 3329 (Order dated Oct. 22, 2012). Mr. King had made no mention of this at the conference. The Court thereupon issued an Order to Show Cause requiring Mr. King to show why he should not be relieved and terminated as Mr. Southerland's counsel. It further directed Mr. King to serve a copy of the Order on Mr. Southerland, and Mr. King filed a certification that he had done so. Id.

Neither Mr. King nor Mr. Southerland responded to the Order to Show Cause, and, accordingly, the Court entered an Order on October 30, 2013, explaining what had occurred and relieving Mr. King as attorney. Following that, there was substantial motion practice and conferences in preparation for the retrial, some of which Mr. Southerland attended *pro se*, but Mr. King did not appear again.

On the morning of jury selection, Mr. King was present in Court and announced that he would represent Mr. Southerland at the retrial. Magistrate Judge Bloom, who was selecting the jury, advised Mr. King that since he had been terminated as an attorney in this matter and was not admitted in this Court, he would be required to file a motion for pro hac vice admission. That same morning, Mr. King filed the motion, and I denied it from the bench for the reasons set forth below.

## DISCUSSION

The Second Circuit has set for the circumstances under which an unadmitted attorney may proceed in a district court within this Circuit. Admission pro hac vice for one trial does not extend to a subsequent trial in the matter. "Admission pro hac vice is by definition, at most, admission for a single proceeding. An unadmitted attorney who seeks to represent a [party] upon a retrial must secure a second admission pro hac vice." In re Rappaport, 558 F.2d 87, 88 n.1 (2d Cir. 1977). It is axiomatic that "admission to the Bar of one state does not carry with it the right to practice law anywhere else." Id. at 89. Moreover, "[j]ust as with a regularly admitted attorney, one seeking admission pro hac vice is subject to the ethical standards and supervision of the court." Id. Indeed, before a district court can admit an attorney pro hac vice, the court "must have some reasonable assurance that such attorney is familiar with the Federal Rules of Civil Procedure, the Local Rules for the [Eastern] District of New York, this Court's Individual Rules, and the customs and practices of this Court." Erbacci, Cerone, and Moriarty, Ltd. v. United States, 923 F. Supp. 482, 485-86 (S.D.N.Y. 1996).

It follows from this that an attorney who is admitted pro hac vice must comport himself in the manner of attorneys who have standing admission to this Court. Having had Mr. King try this case before me previously, it is clear that Mr. King does not meet this standard. This Court

3

has had no attorney before it in any case who has demonstrated the defiance, lack of respect, and unawareness of local practice and the Federal Rules of Civil Procedure as Mr. King demonstrated during the trial of this case.

The record contains numerous examples but a few will make the point. First, Mr. King had difficulty with arriving on time for conferences or trial. That of course happens from time to time; when it does, attorneys apologize and the case goes on. Mr. King, however, refused to acknowledge his obligation to be on time:

> THE COURT: Mr. King has entered the courtroom.
>
> Mr. King, it's 9:43, the jury has been waiting for you since 9:30. You heard me yesterday emphasize to them how it was important that they be prompt so that they not keep us all waiting and you have kept us all waiting.
>
> Please be on notice that I will impose a substantial monetary fine if you are late particularly since you missed the pretrial conference for being late and then you then wrote a letter assuring me that you will not be late again so this is your final warning, sir.
>
> MR. KING: Your Honor, I would like to make a record.
>
> THE COURT: Go ahead.
>
> MR. KING: I've only been practicing law for eight years now. I practiced in federal courts, state courts throughout this nation. I worked for a federal judge in –
>
> THE COURT: Mr. King, please get to your point.
>
> MR. KING: That is my point.
>
> THE COURT: That has nothing to do with your lateness. Trial was called for 9:30 everyone made to here but you.
>
> MR. KING: Your Honor, I can never assure anyone I won't be late, okay.
>
> THE COURT: That's quite a remarkable statement. That's quite a remarkable statement.
>
> MR. KING: Well, it's true.
>
> THE COURT: Okay.
>
> MR. KING: And so I made my record. Thank you, your Honor.[1]

---

[1] The court reporter misidentified some of the parties in this exchange, and they are corrected above.

On another occasion during the trial, Mr. King stated that he had obtained a stipulation allowing the admission of document into evidence, when in fact no such stipulation had ever been reached:

> MR. KING: Your Honor, I would ask that this document be published. It's been admitted by stipulation of the parties before trial.
>
> THE COURT: Really?
>
> MR. KING: Yes.
>
> THE COURT: Parties agree with that?
>
> MR. BOWE: No, your Honor.
>
> THE COURT: I don't know of any such stipulation. It's fine, Mr. King, you'll show me the stipulation or the transcript –
>
> MR. KING: I was hoping the court would go on my word. The reason this is already marked Plaintiffs' Exhibit C4 is because these were exhibits that were vetted in pretrial conference and the reason it appears here in C4. If your Honor will take a look. This is not my exhibit. This is plaintiffs' exhibit by Mr. O'Neill that he put in, that he handed to me as Plaintiffs' Exhibit C4.
>
> THE COURT: Lots of things get marked; that doesn't mean they're stipulated into evidence.
>
> MR. KING: Okay.

It is unclear whether Mr. King was unaware of what a stipulation is, or whether he was deliberately misrepresenting the status of the exhibit.

It is common practice in this district, in both civil and even criminal cases, for the party presenting its case to disclose its witnesses for the next day. Mr. King refused the Court's express direction to make that disclosure. After evading the Court's inquiry, the following occurred:

> THE COURT: So it will just be Mr. Southerland.
>
> MR. KING: It may be Ciara Manning.
>
> THE COURT: I need to know, Mr. King.

5

  MR. KING: I don't know.

  THE COURT: You don't know?

  MR. KING: Absolutely not. I'm confused. It may be Ciara Manning, it may not. Maybe if your Honor would explain why.

  THE COURT: It is common practice to identify who your witnesses are going to be the day before you call them. It's done all the time.

  MR. KING: Okay. I don't know that because I don' know what anyone else is going to testify to.

  THE COURT: It's the children.

  MR. KING: Okay.

  THE COURT: You know what they're going to testify to.

  MR. KING: And Mr. Southerland.

  THE COURT: And you know what Mr. Southerland is going to testify to.

  MR. KING: Do I?

  THE COURT: He's your client.

  MR. KING: He's going to be cross-examined.

  THE COURT: You don't know what he's going to say on cross-examination?

  MR. KING: I don't know what their cross-examination is going to be.

*Isn't this fun? I enjoy it.*

  THE COURT: I'm entering an order now directing you to tell me whether you're calling Ms. Manning tomorrow.

  MR. KING: Tomorrow?

  THE COURT: Tomorrow as part of your case. If there is time for her tomorrow, are you going to call her?

  MR. KING: If there's time for her tomorrow, and there's a good reason to call her, I will. I'm sorry, your Honor, I will limit my client's case. Even if your Honor entered an order, all I would do is just object and appeal. I just can't be intimidated by an order that is asking me to do something that I have an obligation not to do. And so, I understand your Honor's concern I just – it doesn't make a difference one way or another because I know what obligations are and I live up to them, that's what I am.

  THE COURT: Mr. King, I'm not trying to intimidate you.

  MR. KING: Okay.

  THE COURT: I'm asking you a question that every judge in this courthouse asks every lawyer the day before that lawyers is going to put on their case.

6

>MR. KING: Okay.
>
>THE COURT: Which is who are their witnesses.
>
>MR. KING: All right and, your Honor. You do recognize that although maybe every judge in this courthouse does that, and I don't know if that's true or not, I take your Honor at his word, your Honor understands not every judge I've appeared in front of does that.
>
>THE COURT: You're here on pro hac vice admission.
>
>MR. KING: That's right.
>
>THE COURT: You must obey the practice and rules of this court and you must obey court orders.
>
>MR. KING: If your Honor has a rule that would require me to say what my client is going to testify to, or whether I'm going to need a witness it may be that I don't need the witness.
>
>What I would like to do is I would like to say if Ciara is going to testify tomorrow she will be available.

(Emphasis added).

Mr. King also displayed an unawareness of the workings of Fed. R. Civ.P. 50 when he argued that co-plaintiffs' counsel should move for judgment as a matter of law before the defense case had even been put on:

>THE COURT: What could your motion be?
>
>MR. KING: Actually, I wanted to come over here and make sure Mr. O'Neill didn't waive his right to make –
>
>THE COURT: What could his motion be?
>
>MR. KING: The Rule 50.
>
>MR. O'NEILL: After the defendant has had an opportunity –
>
>MR. KING: No, after any party. After any party.
>
>THE COURT: If a party has been fully heard on an issue during a jury trial, then you have a Rule 50 motion.
>
>MR. KING: Right. And so Mr. O'Neill has one, I don't.
>
>THE COURT: He would move against the defendant.
>
>MR. KING: Right.
>
>THE COURT: And the defendant has not been fully heard.

7

  MR. KING: Oh, I thought – if you could read the rule again.  I thought it said, "if 'a' party."

  THE COURT: "If a party has been fully heard on an issue."

  MR. KING: Right.

  THE COURT: That refers to, Mr. King, the adverse party, the party opposing the motion.

  MR. KING: Okay.

At one point where an evidentiary issue was being discussed, Mr. King diverted the discussion to confront the Court personally:

  MR. KING: Your Honor, for clarification, then, is the order – your Honor you look a little irritated.

  THE COURT: I'm not irritated.  You're misreading my look, Mr. King, I'm not at all irritated.

  MR. KING: When someone rolls their eyes –

  THE COURT: I did not roll my eyes, Mr. King.  I did look down and up at you at the same time but I did not roll my eyes.

  MR. KING: I'm sorry, your Honor I may have to clean my glasses.

Mr. King continued to defy the Court and engage in misconduct during his closing argument.  Despite the absence – and irrelevance to the jury – of the procedural history of the litigation, he told the jury that the matter had been remanded by the Second Circuit and, apparently with reference to a certiorari petition, told the jury: "This case went all the way to the U.S. Supreme Court, [and] no court has ever found ---."  When defense counsel understandably objected, I instructed the jury:

  THE COURT: Ladies and gentlemen, when you consider this case, you're going to need to confine yourself to the facts that are in the record before you, not the facts that may have been asserted by counsel which are not in the record.  Please continue Mr. King.

  MR. KING [to the jury]:  The proceedings in the U.S. Supreme Court are public, and so, I'm not permitted to say it today but that you know your obligation is to find the truth.

8

In addition, referring to the petition for removal of the children which Mr. King believed had been excluded from evidence, he told the jury: "I wanted to show you the petition, I wasn't permitted to. He [referring to defendant] lied in the petition."

Mr. King again referred to transcripts of the family court proceeding which were not in evidence, and told the jury: "Mr. Bowe [defense counsel] came in here and told you that [Mr. Southerland had removed the family court transcripts]. He didn't tell you that he sent an email two weeks ago saying that they had them but they lost them on 9/11." First of all, defense counsel had made no such accusation against Mr. Southerland. More importantly, there was no such email in the record. To make matters worse, when confronted after argument with the absence of the email to which he had referred, Mr. King disclaimed knowledge of whether or not the email was actually in the record.

These examples are far from exhaustive, but they suffice to demonstrate that Mr. King is not qualified to practice in this Court. The motion for pro hac vice admission is therefore denied.

**SO ORDERED.**

                                                                        _____
                                                                                      U.S.D.J.

Dated: Brooklyn, New York
       February 24, 2014